IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
PLUMBERS AND STEAMFITTERS      *
LOCAL 150 PENSION FUND and     *
JEFFREY RICE and               *
RORY LAFONTAINE, as            *
Representative Trustees of the *
Pension Fund,                  *
                               *
         Plaintiffs,           *      CV 115-038
                               *
    v.                         *
                               *
MUNS WELDING AND MECHANICAL,   *
INC.,                          *
                               *
         Defendant.            *
```

## O R D E R

Presently before the Court are Plaintiffs' motion for judgment on the pleadings (Doc. 15), Defendant's motion for summary judgment (Doc. 27), Plaintiffs' cross motion for summary judgment (Doc. 35), and Defendant's motion to quash Plaintiffs' notice of intent to file reply brief (Doc. 40). For the reasons below, the Court **GRANTS** the motion for judgment on the pleadings and **DENIES AS MOOT** the motion for summary judgment, the cross motion for summary judgment, and the motion to quash.

### I. BACKGROUND

This case arises out of a dispute between Plaintiffs Plumbers and Steamfitters Local 150 Pension Fund ("Pension Fund") and Jeffrey Rice and Rory LaFontaine, as representative trustees of the Pension Fund, and Defendant Muns Welding and

Mechanical, Inc. ("Muns Welding"). In accordance with the collective bargaining agreement between Plumbers and Steamfitters Local Union 150 and the Augusta Mechanical Contractors Association, Inc., Defendant had an obligation to make fringe benefit contributions to the Pension Fund on behalf of its employees. (Compl., Doc. 1.) However, when the agreement expired on September 30, 2013, Defendant was no longer bound. (Id.) Yet, on December 1, 2014, the Pension Fund provided Defendant with a demand letter indicating that Defendant owed the Pension Fund $2,416,913 in withdrawal liability. (Id.) To justify this demand, the Pension Fund stated that, by continuing to direct union members to perform work in the purview of the expired agreement without making the same contributions, Defendant had effectively withdrawn from the Pension Fund. (Id.)

After denying the contentions within the Pension Fund's letter, Defendant filed suit in this Court on February 2, 2015, seeking declaratory and injunctive relief from the Pension Fund's allegations. (See Muns Welding & Mech., Inc. v. Bd. of Trs. of Plumbers & Steamfitters Local No. 50 Pension Fund, No. 1:15-cv-017 (S.D. Ga. Apr. 2, 2015).) As to Defendant's case, this Court granted the Pension Fund's motion to dismiss because the Employment Retirement Income Security Act of 1974 ("ERISA") mandates that withdrawal liability disputes be handled in

arbitration. Before the Court's order was issued, however, Plaintiffs filed the instant action on March 6, 2015, seeking interim payments on the alleged withdrawal liability. (Compl., Doc. 1.) Since that time, a motion for judgment on the pleadings, two summary judgment motions, and a motion to quash have been filed. The Court will now address each of these in turn.

## II. Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). However, a judgment on the pleadings is only appropriate "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1300 (11th Cir. 2001). A fact is "material" if "it might affect the outcome of the suit under the governing [substantive] law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "In other words, a judgment on the pleadings alone, if sustained, must be based on the undisputed facts appearing in all the pleadings." Stanton v. Larsh, 239 F.2d 104, 106 (5th Cir. 1957).

The legal standards governing Rule 12(c) motions are the same as those governing Rule 12(b)(6) motions to dismiss. Roma

3

Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.") Therefore, Plaintiffs' complaint "must contain sufficient factual matter to state a claim for relief that is 'plausible on its face.'" JP Morgan Chase Bank, N.A. v. Sampson, No. 1:10-cv-1666, 2012 WL 949698, at *2-3 (N.D. Ga. Mar. 20, 2012) (quoting Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010)). To be "plausible on its face," the complaint must have enough "factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In applying this standard, factual allegations are accepted as true, but legal conclusions are not. Id.

Turning to the instant case, Plaintiffs filed suit seeking (1) all unpaid withdrawal liability payments due and owing by Defendant, (2) interest on those payments, (3) ERISA statutory damages, (4) liquidated damages, and (5) expenses, including attorneys' fees, incurred in bringing this action. (Compl., Doc. 1.) With respect to Plaintiffs' motion for judgment on the pleadings, the Court will determine whether Defendant has any outstanding withdrawal liability and, if so, whether any additional awards are warranted.

## A. Unpaid Withdrawal Liability

Under 29 U.S.C. § 1381, if an employer withdraws from a multiemployer plan in a complete or partial withdrawal, then the employer incurs "withdrawal liability." If a withdrawal has occurred, the plan sponsor shall "determine the amount of the employer's withdrawal liability, notify the employer of [that amount], and collect [that amount] from the employer." 29 U.S.C. § 1382. More specifically, "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall notify the employer of (i) the amount of the liability and (ii) the schedule for liability payments." 29 U.S.C. § 1399(b)(1). Thereafter, the plan sponsor "shall demand payment in accordance with the schedule." Id. However, if done within ninety days of receiving the notice, the employer may ask the plan sponsor to review the schedule for inaccuracies or to consider additional information. 29 U.S.C. § 1399(b)(2)(A).

After the plan sponsor's review, should the employer still be unsatisfied with the liability amount or the sheer existence of liability, it can initiate arbitration proceedings. 29 U.S.C. § 1401(a)(1). Following arbitration, a dissatisfied party may file suit in a federal district court. 29 U.S.C. § 1401(b)(2). Yet, as indicated in the parties' earlier suit, "[e]ven if the employer challenges the trustees' withdrawal liability determination . . . it must still pay according to the

5

trustees' schedule under the statute's 'pay now, dispute later' collection procedure." <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cali., Inc.</u>, 522 U.S. 192, 197 (1997).

Regarding the instant motion, Plaintiffs will prevail if none of the following are in dispute: (1) Plaintiff Pension Fund is a multiemployer plan; (2) Defendant is an employer within Pension Fund's multiemployer plan; (3) Plaintiffs Rice and Lafontaine are "plan sponsor[s]"; (4) Plaintiffs contend that Defendant withdrew from the plan; (5) Plaintiffs notified Defendant of the amount of withdrawal liability and the schedule for its payment; (6) Plaintiffs demanded payment from Defendant; and, (7) Defendant has failed to make one or more withdrawal liability payments.

In paragraph two of their complaint, Plaintiffs allege that Plaintiff Pension Fund is a multiemployer plan within the meaning of 29 U.S.C. § 1301(a)(3). In its answer, Defendant admits to the allegations in this paragraph. Consequently, Plaintiff Pension Fund is a multiemployer plan.

In paragraph twelve of their complaint, Plaintiffs allege that Defendant is an employer within the meaning of 29 U.S.C. § 1002(5), which includes "any person acting directly as an employer . . . in relation to an employee benefit plan." In its answer, Defendant admits to the allegations of this paragraph.

6

Additionally, in paragraph sixteen of its complaint, Plaintiffs allege that "Defendant had an obligation to make fringe benefit contributions to the Pension Fund." In its answer, Defendant admits that it "had and continues to have" such an obligation. Consequently, based on these admissions, Defendant is an employer within Plaintiff Pension Fund's multiemployer plan.

In paragraphs four through six of their complaint, Plaintiffs allege that Jeffrey Rice and Rory Lafontaine are representative trustees of the Pension Fund who exercise discretionary authority and control with respect to the management of the Pension Fund and its assets. In paragraph seven, Plaintiffs allege that Rice and Lafontaine are also fiduciaries of the Pension Fund within the meaning of 29 U.S.C. § 1002(21). In its answer, Defendant admits to the allegations of these paragraphs. Thus, because a "plan sponsor" includes a "group of representatives of the parties who establish or maintain the plan," Plaintiffs Rice and Lafontaine are plan sponsors. 29 U.S.C. § 1002(16)(B).

In paragraph twenty-five, Plaintiffs allege that Defendant completely withdrew from the Pension Fund within the meaning of 29 U.S.C. § 1383(b)(2). In paragraph twenty-seven, Plaintiffs allege that they sent a letter (Ex. 3, Doc. 1-2) by certified mail to Defendant notifying it of its withdrawal liability, the schedule for its payment, and Plaintiffs' demand for such

payment. In its answer, Defendant admits that it received Plaintiff's letter.

In paragraph thirty-three, Plaintiffs allege that, on February 9, 2015, their counsel demanded from Defendant the quarterly payment that was due on January 30, 2015. In its answer, Defendant acknowledged receiving the demand but denied that any such payment is or ever has been due. Consequently, Defendant has not made the quarterly payment that was due on January 30, 2015.

Based on these excerpts from the parties' pleadings, Plaintiffs are entitled to interim liability payments from Defendant. More specifically, given the demand letter and payment schedule attached to Plaintiffs' complaint (Ex. 3, Doc. 1-2), Defendant was, and continues to be, obligated to pay Plaintiff Pension Fund $59,491.40 each quarter, beginning on January 30, 2015, until $2,416,913 in withdrawal liability is paid. Yet, according to the pleadings, Defendant has not made the first of these quarterly payments. As a result, Plaintiffs' motion for judgment on the pleadings is granted, and Defendant must pay Plaintiff Pension Fund $59,491.40.[1]

---

[1] As of today's date, Defendant should have already made three quarterly payments. (Ex. 3, Doc. 1-2.) However, because the pleadings indicate that Defendant has missed only one of these installments, the Court cannot order Defendant to pay an amount greater than $59,491.40.

## B. Interest, Statutory Damages, and Attorneys' Fees and Costs

In an action to compel an employer to pay withdrawal liability, "any failure of the employer to make any withdrawal liability payment within the time prescribed[2] shall be treated in the same manner as a delinquent contribution [within the meaning of 29 U.S.C. § 1145]." 29 U.S.C. § 1451(b). Therefore, because a multiemployer plan is entitled to interest, statutory damages, and reasonable attorneys' fees and costs when successfully bringing an action for delinquent contributions under 29 U.S.C. § 1145, a multiemployer plan is also entitled to these awards when bringing a successful action for withdrawal liability payments.[3] 29 U.S.C. § 1132(g)(2). Accordingly, since the Court has found Defendant liable for the unpaid withdrawal liability payment, Plaintiffs are entitled to interest on the outstanding payment, statutory damages, and reasonable attorneys' fees and costs. However, Plaintiffs are not entitled to the additional liquidated damages and expenses requested in their complaint and referenced within the parties' trust agreement. See Carpenters

---

[2] Defendant contends that the phrase "within the time prescribed" refers to a time period following an arbitrator's final decision. However, because the parties have yet to enter arbitration, much less receive a final decision in arbitration, this argument is unpersuasive. Instead, the phrase "within the time prescribed," as found in section 1451(b), refers to the deadlines set forth by Plaintiffs' withdrawal liability schedule.

[3] Here, the Court uses the term "statutory damages" to refer to the award under 29 U.S.C. § 1132 that equals "the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of twenty percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court subparagraph (A)." 29 U.S.C. § 1132(g)(2)(C).

& Joiners Welfare Fund v. Gittleman Corp., 857 F.2d 476, 479 (8th Cir. 1988)(holding that the "detail and comprehensiveness of the section 1132(g)(2) remedy" indicates that other remedies should not be available).

To determine the interest and statutory damages owed by Defendant, the Court must know the interest rate and the liquidated damages provided for within the parties' plan. See 29 U.S.C. § 1132(g). While under their Articles of Agreement (Ex. 1, Doc. 1-2) it appears that the interest rate on unpaid contributions is twelve percent per annum and the liquidated damages amount to ten percent of unpaid contributions, the Court will afford both parties the opportunity to dispute these figures. To do so, each party should file a memorandum and supporting documentation with the Court. Additionally, Plaintiffs must provide sufficient information for the Court to determine the reasonable attorneys' fees and costs that Defendant must pay.

### III. Other Motions

With this Order, the Court has granted Plaintiffs' motion for judgment on the pleadings and will instruct the Clerk to enter judgment in favor of Plaintiffs. As a result, the Court denies as moot the following motions: Defendant's motion for summary judgment (Doc. 27), Plaintiffs' cross motion for summary

judgment (Doc. 35), and Defendant's motion to quash Plaintiffs' notice of intent to file reply brief (Doc. 40).

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiffs' motion for judgment on the pleadings (Doc. 15) and **DENIES AS MOOT** Defendant's motion for summary judgment (Doc. 27), Plaintiffs' cross motion for summary judgment (Doc. 35), and Defendant's motion to quash Plaintiffs' notice of intent to file reply brief (Doc. 40). Accordingly, the Court **ORDERS** Defendant to pay Plaintiff Pension Fund **$59,491.40 before November 22, 2015**, and **DIRECTS** the Clerk to **ENTER JUDGMENT** in favor of Plaintiffs. Additionally, the Court **ORDERS** Plaintiffs to file a memorandum detailing their attorneys' fees and costs **before November 16, 2015**, and **DIRECTS** both parties to file, **before November 16, 2015**, any contentions to the aforementioned amounts for interest and liquidated damages.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of October, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA